PROTECT OUR MOUNTAIN ENVIRONMENT, INC.; Howard Farrand; and William M. Lewis, Petitioners,

v.

The DISTRICT COURT In and For the COUNTY OF JEFFERSON, State of Colorado, and the Honorable Ronald J. Hardesty, one of the Judges thereof, Respondents.

No. 83SA387.

Supreme Court of Colorado, En Banc.

Feb. 21, 1984.

Plaut/Lipstein/Beckman/P.C., Frank Plaut, Nancy Cohen, Lakewood, for petitioners.

Miller & Leher, Martin P. Miller, Littleton, for respondents.

George W. Pring, Denver, for amici curiae American Civil Liberties Union of Colo., The League of Women Voters of Colo., Colo. Common Cause and Capitol Hill United Neighborhoods, Inc.

QUINN, Justice.

In this original proceeding the petitioners, Protect Our Mountain Environment, Inc., Howard Farrand, and William Lewis (collectively POME), challenge a ruling of the Jefferson County District Court denying their motion to dismiss a complaint for damages based on the torts of abuse of process and civil conspiracy filed against them by Gayno, Inc., and Lockport Corporation (collectively Gayno). The motion to dismiss was based on POME's First Amendment right to petition the court for redress of grievances. After the respondent court denied POME's motion, we issued a rule directing the respondent court to show cause why it should not dismiss Gayno's complaint against POME. We make the rule absolute with respect to the order denying the motion to dismiss, and we direct the respondent court to reconsider the motion in accordance with the standard herein set forth.

I.

In June 1977 Gayno filed an application with officials of Jefferson County to obtain the rezoning of 507 acres of land near

Evergreen, Colorado.[1] If the county approved its application, Gayno planned to construct 465 residential units, a conference center, retail and office space, recreational facilities, an early education center, and over 1700 parking spaces. After giving public notice and conducting public hearings, the Jefferson County Board of County Commissioners (Board) approved Gayno's application on August 14, 1978, and reclassified the 507 acre tract from "Agricultural-Two" to "Planned Development" by amending the Jefferson County zoning map.

On September 12, 1978, POME and nine individuals, pursuant to C.R.C.P. 106,[2] filed an action in the Jefferson County District Court against the Board and Gayno. POME sought to overturn the Board's approval of Gayno's application for rezoning on the ground that the Board had exceeded its jurisdiction and abused its discretion. In its complaint, which consisted of thirteen claims, POME asserted, *inter alia*, that the Board arbitrarily violated several state statutes by not adequately considering the impact of the development on the region's air quality, highway usage, and wildlife, by failing to ensure that there would be adequate water, fire protection, and sewage systems for the development, and by approving the development despite contrary county land use plan density requirements; POME also claimed that the Board's action constituted illegal spot zoning.[3] In support

---

1. Our statement of the facts is taken from POME's complaint requesting relief under C.R.C.P. 106, Gayno's complaint against the petitioners, and the district court's June 8, 1983 ruling on the petitioners' motion to dismiss Gayno's complaint.

2. C.R.C.P. 106(a)(4) provided in pertinent part as follows in 1978:

   "(a) ... In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:

   \*       \*       \*       \*       \*       \*

   "(4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy. Upon the filing of the complaint the court shall direct the issuance of a citation to the inferior tribunal to show cause why the relief requested shall not be allowed. If the complaint is supported by an affidavit the order to show cause may be issued, or the court may forthwith order the inferior tribunal, or any person having custody of the records of the proceedings described in the complaint, to certify to the court at a specified time and place a transcript of the record and proceedings, or such portion thereof as the court may direct. If a stay of proceedings is granted the citation or order shall so state. Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion."

   The current version of C.R.C.P. 106(a)(4), which was amended in 1981, can be found in the 1983 Supplement to Volume 7A of the Colorado Revised Statutes, 1973.

3. The thirteen causes of action in POME's complaint asserted that the Board exceeded its jurisdiction and abused its discretion by: (1) not acting to adequately protect the area's air quality in violation of section 30–28–115(1), C.R.S. 1973 (1977 Repl.Vol. 12); (2) rezoning the tract in a manner inconsistent with county land use plan density requirements in contravention of section 30–28–106, C.R.S.1973 (1977 Repl.Vol. 12); (3) ignoring a planning commission resolution which recommended the beginning of highway improvements before the approval of the rezoning; (4) approving a development which further overburdened a dangerous and overcrowded highway in violation of section 30–28–115(1), C.R.S.1973 (1977 Repl.Vol. 12); (5) not ensuring that the development would have an adequate fire protection system in violation of section 30–28–115(1), C.R.S.1973 (1977 Repl.Vol. 12); (6) not assuring that the development would have an adequate supply of water in contravention of section 30–28–133(6)(a), C.R.S. 1973 (1977 Repl.Vol. 12); (7) not assuring that the development would have a proper sewage system in violation of section 30–28–133(6)(b), C.R.S.1973 (1977 Repl.Vol. 12); (8) approving a large development that would injure a herd of elk because of their use as grazing grounds of the meadow where the development was planned; (9) not seeking out further evidence concerning the developer's financial condition; (10) approving the rezoning despite the absence of any present changes in the area that justified the rezoning; (11) approving an amendment that constituted spot zoning; (12) not seeking further assurances that the developers could afford a $1,200,000 gift they had pledged to the Jefferson County School System; and (13) approving a development that was not commercially justified in light of recent retail and office construction in the Evergreen area in violation of section 30–28–115, C.R.S.1973 (1977 Repl.Vol. 12).

of these assertions, the complaint cited the testimony given before the Board by various state officials responsible for air quality, highways, water, and wildlife, as well as the testimony and letters of numerous water and sanitation experts, and comments and letters submitted to the Board by residents and groups questioning various aspects of the project. The district court ruled against POME on May 9, 1980. POME subsequently appealed to the Colorado Court of Appeals which, in an unpublished opinion, affirmed the district court judgment.[4]

On April 1, 1980, Gayno filed a complaint in the Jefferson County District Court against POME and its legal counsel. In its complaint Gayno alleged that POME, knowing its claims were without legal justification, had abused the legal process and caused Gayno economic harm by bringing the C.R.C.P. 106 action, by unreasonably delaying the filing of the administrative record, and by filing numerous baseless motions prior to the entry of judgment. Gayno also asserted that POME, along with the individual plaintiffs in the C.R.C.P. 106 action and POME's legal counsel, had entered into a civil conspiracy to bring a groundless lawsuit against Gayno and had filed the C.R.C.P. 106 action without conducting a reasonable investigation of the facts and law underlying their claims. Asserting that these actions caused it to suffer economic injury because of increases in financing and construction costs, Gayno sought $10,000,000 in compensatory damages and $30,000,000 in exemplary damages.

POME filed a motion to dismiss Gayno's complaint on the ground that POME's commencement of the C.R.C.P. 106 action was a lawful exercise of its First Amendment right to petition the government for redress of grievances. The respondent court, concluding that POME's C.R.C.P. 106 action constituted a "sham" which fell outside the scope of First Amendment protection, denied the motion. In ruling on the motion, the court received no evidence, made no findings, and made its ruling solely on the basis of POME's prior C.R.C.P. 106 complaint and Gayno's pending complaint against POME. POME then sought prohibitory relief in this court, asserting that its legal challenge to the zoning reclassification was constitutionally protected activity and was not subject to the "sham exception" relied on by the respondent court in denying its dismissal motion.

## II.

The First Amendment to the United States Constitution guarantees "the right of the people ... to petition the government for a redress of grievances." Citizen access to the institutions of government constitutes one of the foundations upon which our republican form of government is premised. In a representative democracy government acts on behalf of the people, and effective representation depends to a large extent upon the ability of the people to make their wishes known to governmental officials acting on their behalf. The right to petition has been characterized as one of "the most precious of the liberties safeguarded by the Bill of Rights." *United ed Mine Workers v. Illinois State Bar*

---

**4.** After the court of appeals issued its opinion, it entered a summary order pursuant to C.A.R. 38 awarding the appellees damages and double costs against POME. At the time of this order, C.A.R. 38 provided as follows: "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." We do not believe this order is relevant to the issues we address in this opinion for two reasons. First, as required by the 1981 version of C.A.R. 38, the court entered its order solely on the basis of the appeal and did not consider whether the C.R.C.P. 106 action filed in the district court had a

reasonable basis in fact or law. It is POME's district court action, however, that constitutes the asserted basis of Gayno's claims for abuse of process and civil conspiracy. *See* Part III, *infra*. The district court, after entering judgment against POME in the C.R.C.P. 106 action, rejected Gayno's request for attorney fees, which was based on Gayno's assertion that POME's C.R.C.P. 106 challenge was frivolous. Second, the court of appeals did not enter its order in the context of the constitutional right to petition government for redress of grievances, the central consideration for resolving this proceeding.

*Association,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426, 430 (1967).

"It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and petition for redress of grievances. All these, though not identical, are inseparable." *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430, 440 (1945).

While the right to petition obviously encompasses activities of a traditionally political nature, its sweep is much broader and includes other forms of activity as well.

#### A.

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court concluded that the Sherman Act could not be applied to a publicity campaign aimed at the passage of legislation that would be destructive of a business competitor.

"A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them." 365 U.S. at 139, 81 S.Ct. at 530–31, 5 L.Ed.2d at 472.

The Court subsequently applied *Noerr* to bar Sherman Act liability for lobbying efforts directed toward executive officers, the Secretary of Labor and Tennessee Valley Authority officials, even though the activities were intended to destroy competition. *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Later, in *California Motor*

*Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 612, 30 L.Ed.2d 642, 646 (1972), the Court, drawing on the *Noerr-Pennington* doctrine, clearly recognized that the right to petition the government for redress of grievances necessarily includes the right of access to the courts. *Accord, e.g., Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* — U.S. ——, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Were it otherwise, the right to petition would have little significance in the constitutional scheme of things. Access to the courts is often the only method by which a person or a group of citizens may seek vindication of federal and state rights and ensure accountability in the affairs of government. For this reason collective activity undertaken to obtain meaningful access to the courts has been recognized as "a fundamental right within the protection of the First Amendment." [5] *United Transportation Union v. State Bar of Michigan,* 401 U.S. 576, 585, 91 S.Ct. 1076, 1082, 28 L.Ed.2d 339, 347 (1971).

The First Amendment right to petition has been applied to immunize various forms of administrative and judicial petitioning activity from legal liability in subsequent litigation. Recently, the Colorado Court of Appeals, relying on the First Amendment right to petition, upheld the dismissal of a complaint in negligence, abuse of process, and tortious interference with business expectancies, filed by a developer against several property owners for opposing a variance granted to the developer and for later unsuccessfully filing a C.R.C.P. 106(a)(4) proceeding to overturn the variance. *Anchorage Joint Venture v. Anchorage Condominium Association,* 670 P.2d 1249 (Colo.App.1983). Courts of other jurisdictions have immunized petitioning activity from legal liability in analogous

---

**5.** The right of access to the courts also finds expression in two provisions of the Colorado Constitution. Article II, Section 6 guarantees that the "[c]ourts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character ...." Similarly, Article II, Section 24 states that "[t]he people have the right ... to apply to those

invested with the powers of government for redress of grievances, by petition or remonstrance." Because Article VI, Section 1 of the Colorado Constitution vests judicial power to redress grievances in state courts, it obviously follows that the Petition Clause of Article II, Section 24 grants Colorado citizens a right of access to those courts.

contexts. *See, e.g., Havoco of America, Ltd. v. Hollobow,* 702 F.2d 643 (7th Cir. 1983) (action for tortious interference with business opportunity, based on allegations that complaints directed by defendants to the Securities and Exchange Commission led to adverse effects on plaintiff's business, barred by First Amendment right to petition); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980) (attempts by property owners to prevent construction of plaintiff's housing complex by seeking zoning amendment and spreading allegedly false and derogatory reports about project immunized from liability in civil rights action based on owners' activities); *Miller & Son Paving, Inc. v. Wrightstown Township Civic Association,* 443 F.Supp. 1268 (E.D.Pa.1978), *aff'd mem.,* 595 F.2d 1213 (3d Cir.1979), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979) (complaint filed by quarry company against civic association and residents for antitrust and civil rights violations, arising out of defendants' initiation of administrative efforts to oppose quarry operation, dismissed on First Amendment grounds); *Sierra Club v. Butz,* 349 F.Supp. 934 (N.D.Cal.1972) (counterclaim for wrongful interference with business relationships and inducement to breach contract, filed by lumber company against environmental group and others for instituting administrative appeals and other acts intended to induce U.S. Forest Service to breach contract with company for sale of lumber, barred by First Amendment right to petition for redress of grievances).

### B.

■ The right to petition government, however, is not without limits. The First Amendment does not grant a license to use the courts for improper purposes. "Just as false statements are not immunized by the First Amendment right to freedom of speech, see *Herbert v. Lando,* 441 U.S. 153, 171 [, 99 S.Ct. 1635, 1646, 60 L.Ed.2d 115, 131] (1979); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 [, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789, 805] (1974), baseless litigation is not immunized by the First Amendment

right to petition." *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* —— U.S. at ——, 103 S.Ct. at 2170, 76 L.Ed.2d at 289.

■ In its *Noerr* decision the Supreme Court developed what has become known as the "sham exception." Recognizing that the Sherman Act could not be applied to genuine efforts to influence legislation or law enforcement practices, the Court nevertheless indicated that antitrust liability could attach to petitioning activity which constituted "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." 365 U.S. at 144, 81 S.Ct. at 533, 5 L.Ed.2d at 475. Later, in *California Motor Transport Co. v. Trucking Unlimited, supra,* the Court, again in an antitrust context, applied the sham exception to a concerted series of administrative and judicial proceedings commenced by California highway carriers for the purpose of defeating applications by a competing group of carriers to acquire operating rights for themselves. Acknowledging that the line between legitimate and sham litigation is often difficult to draw, the Court hastened to add that once it is established that an abuse of administrative or judicial processes produces an illegal result, such as effectively barring persons from access to administrative agencies or courts, the underlying petitioning activity can acquire no immunity "under the umbrella of 'political expression.'" 404 U.S. at 513, 92 S.Ct. at 613, 30 L.Ed.2d at 648. This same reasoning was recently applied outside the antitrust context in *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board, supra,* where the Court held that the National Labor Relations Board may enjoin a state lawsuit as an unfair labor practice if the litigation lacked a reasonable basis in fact or law. Such a suit is not constitutionally protected because, as the Court observed:

"The first amendment interests involved in private litigation—compensation for violated rights and interests, the psychological benefits of vindication,

public airing of disputed facts—are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims. Furthermore, since sham litigation by definition does not involve a bona fide grievance, it does not come within the first amendment right to petition." —— U.S. at ——, 103 S.Ct. at 2170, 76 L.Ed.2d at 289, *quoting* Balmer, *Sham Litigation and the Antitrust Laws*, 29 Buffalo L.Rev. 39, 60 (1980).[6]

■ The sham exception, in addition to requiring a showing of baseless litigation, also requires a claimant suing another for prior petitioning activity to show that the petitioning activity was conducted primarily for harassment or other improper purpose. *See Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* —— U.S. at ——, 103 S.Ct. at 2173, 76 L.Ed.2d at 293 ("[r]etaliatory motive and lack of reasonable basis are both essential prerequisites to the issuance of a cease-and-desist order against a state suit"); *California Motor Transport Co. v. Trucking Unlimited, supra* (filing of lawsuits not prohibited by antitrust laws unless suit was mere sham filed to harass and deter competitor in use of administrative and judicial proceedings). To be sure, an inquiry into the purpose of prior litigation will raise difficult questions concerning the state of mind of the petitioning party. Notwithstanding these difficulties, however, we view the right to seek judicial

relief for redress of grievances as too fundamental in character to permit petitioning activity to be turned against the petitioning party in the absence of a showing that the petitioning activity had lost its constitutionally privileged status by reason of its use primarily for some improper collateral purpose.

■ Because it is the character of the underlying petitioning activity, and not necessarily its frequency, that constitutes the core of the sham exception, *e.g., Bill Johnson's Restaurants, Inc. v. National Labor Relations Board, supra,* it follows that a single lawsuit lacking any reasonable basis in fact or law and brought primarily to harass or to improperly deter another's legitimate activities may satisfy the exception. A repetitious pattern of baseless litigation, in other words, is not necessary for application of the sham exception. *E.g., MCI Communications Corp. v. American Telephone & Telegraph Co.,* 708 F.2d 1081, 1153–55 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 234, 78 L.Ed.2d 226–27 (1983); *Energy Conservation, Inc. v. Heliodyne, Inc.,* 698 F.2d 386 (9th Cir.1983); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1234–35, 75 L.Ed.2d 468 (1983); Fischel, *Antitrust Liability For Attempts to Influence Government Action: The Basis and Limits of the Noerr-Pennington Doctrine,* 45 U.Chi.L.Rev. 80, 108–10 (1977).[7]

---

**6.** We have construed the Colorado constitutional provision requiring courts to be open to every person and a speedy remedy be afforded for every injury, *Colo. Const.* Art. II, Sec. 6, in a similar fashion. The Colorado constitutional right of access is conditioned on the existence of a legal right under law to seek redress from another. When such a right accrues under law, the courts must be available to effectuate that right. *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo.1982); *O'Quinn v. Walt Disney Productions, Inc.,* 177 Colo. 190, 493 P.2d 344 (1972). This constitutional provision, however, does not grant litigants the right to misuse the judicial process or pursue actions not supported by a rational foundation in fact or law. *See, e.g., Board of County Commissioners v. Howard,* 640 P.2d 1128 (Colo.1982), *appeal dismissed,* 456 U.S. 968, 102 S.Ct. 2228, 72 L.Ed.2d 841 (1982); *People v. Dunlap,* 623 P.2d 408 (Colo.1981).

**7.** Although the Supreme Court in *California Motor Transport* referred to "a pattern of baseless, repetitive claims" as evidence of sham activity, 404 U.S. at 513, 92 S.Ct. at 613, 30 L.Ed.2d at 648, this language has been viewed as an exposition of the factual situation before the Court and not as a holding that a repeated pattern of baseless claims is necessary to the sham exception. The Seventh Circuit Court of Appeals in *MCI Communications Corp. v. American Telephone & Telegraph Co.,* 708 F.2d 1081 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 234, 78 L.Ed.2d 226–27 (1983), recently considered whether a single lawsuit can constitute sham litigation. The court concluded that, based on the alignment of the Supreme Court in *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), a majority of the Court believes that a single claim, lawsuit, or

Nor does the sham exception require the prior petitioning activity be such as to virtually bar all meaningful access to administrative or judicial processes of adjudication. *E.g., Litton Systems, Inc. v. American Telephone & Telegraph Co.,* 700 F.2d 785, 809 n. 36 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) 1984); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., supra. Cf. Otter Tail Power Co. v. United States,* 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359, 369 (1973), *on remand,* 360 F.Supp. 451 (D.Minn.1973), *aff'd mem.,* 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974) (noting that the filing of "repetitive lawsuits carrying the hallmark of insubstantial claims [falls] within the 'mere sham' exception," without mention of an access-barring requirement, before remanding antitrust case for further consideration in light of *California Motor Transport Co.*). What the sham exception does require is that the prior petitioning activity had the capacity to adversely affect a legal interest of the party against whom the activity was directed. *See, e.g., MCI Communications Corp. v. American Telephone & Telegraph Co.,* 708 F.2d at 1158; *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 896 (2d Cir.1981). In many cases an examination of the petitioning party's claim in the prior administrative or judicial proceeding will show whether this requirement has been satisfied.

### C.

■ It cannot be denied that suits filed against citizens for prior administrative or judicial activities can have a significant chilling effect on the exercise of their First Amendment right to petition the courts for redress of grievances. *See* Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions,* 74 Mich.L.Rev. 106, 110–11 (1975). Damage to other persons and society, however, can also result from baseless litigation instigated under the pretext of legitimate petitioning activity. *See* R. Ellickson & A. Tarlock, *Land-Use Controls* 333–59 (1981). Accommodation of these competing concerns can best be achieved by requiring the suing party, when confronted with a motion to dismiss predicated on the First Amendment right to petition the government for redress of grievances, to demonstrate the constitutional viability of his claim. Because this constitutional defense raises the question of whether the plaintiff's complaint states a claim upon which relief can be granted, the court

---

petition can constitute sham litigation. The Court then continued:

"The recent Ninth Circuit case of *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1254–57 (9th Cir. 1982), provides the most thorough examination of the rationale for permitting antitrust liability to rest on the prosecution of a single claim before an administrative agency. In *Clipper Exxpress* the defendant opposed the filing of a single tariff before the ICC. The district court granted summary judgment for the defendants holding that the defendants' conduct was immunized by the *Noerr-Pennington* doctrine. The Ninth Circuit reversed the summary judgment and held that a single baseless claim could constitute sham litigation. The court analyzed the issue as follows:

'The sham exception ... reflects a judicial recognition that not all activity that appears as an effort to influence government is actually an exercise of the first amendment right to petition. At times this activity, disguised as petitioning, is simply an effort to interfere directly with a competitor. In that case, the "sham" petitioning activity is not entitled to first amendment protection, *because it is not an exercise of first amendment rights.*

'If the activity is not genuine petitioning activity, the antitrust laws are not suspended and continue to prohibit the violating activities. Because application of the antitrust laws is not suspended, it will prohibit sham activity, whether that activity consists of single or multiple sham suits. This analytical framework does not permit a conclusion that single sham suits are protected under *Noerr.'* 690 F.2d at 1255 (emphasis in original).

"*Clipper Exxpress* joins a growing list of federal cases which have held that a single lawsuit or claim may constitute sham litigation. [Citations omitted]. We therefore find that the bringing of baseless claims—even the undertaking of a single sham state court lawsuit—is devoid of the constitutional significance that warrants immunity from the antitrust laws." 708 F.2d at 1154–55.

should give the parties a reasonable opportunity to present all material pertinent to the motion and should treat the motion as one for summary judgment, *see* C.R.C.P. 12(b), to be resolved under the heightened standard we herein adopt. That standard requires that when, as here, a plaintiff sues another for alleged misuse or abuse of the administrative or judicial processes of government, and the defendant files a motion to dismiss by reason of the constitutional right to petition, the plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment because: (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff.

This standard will safeguard the constitutional right of citizens to utilize the administrative and judicial processes for redress of legal grievances without fear of retaliatory litigation and, at the same time, will permit those truly aggrieved by abuse of these processes to vindicate their own legal rights. We now consider, in light of this standard, the respondent court's resolution of POME's motion to dismiss.

### III.

■ The crux of Gayno's complaint for abuse of process and civil conspiracy related to POME's prosecution of the C.R.C.P. 106 action in the Jefferson County District Court from September 12, 1978, when the action was filed, until May 9, 1980, when the district court entered a judgment affirming the Board's rezoning decision. There is no basis in the record to warrant the respondent court's summary denial of POME's motion to dismiss under the aforementioned standard.

When POME's suit was filed in September 1978, C.R.C.P. 106(a)(4) stated that relief may be obtained in the district court "[w]here an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy." This rule provides the exclusive judicial remedy for challenging a rezoning determination. *E.g., Information Please, Inc. v. District Court,* 194 Colo. 42, 568 P.2d 1162 (1977). In its C.R.C.P. 106 action POME asserted that the Board abused its discretion and acted arbitrarily and capriciously when it approved Gayno's rezoning application, and thereby impaired the environmental, ecological, and aesthetic interests of POME and its members. According to the complaint, the Board's decision violated several state statutes and county land use requirements, was invalid as illegal spot zoning, and, on the .basis of the administrative record, was an abuse of the Board's authority and discretion in zoning matters. POME incorporated in its complaint the testimony of several persons, including expert witnesses who testified at the rezoning hearings, as well as letters filed with the Board by other interested persons and groups.

Although there can be no doubt that POME's C.R.C.P. 106 action was capable of adversely affecting the legal interest of Gayno in the real estate development project, the first two components of the controlling standard have not been satisfied. It cannot reasonably be concluded on the basis of the pleadings alone that POME's C.R.C.P. 106 complaint was without a reasonable basis in fact or law. Obviously, POME's legal challenge to the Board's decision cannot be characterized as a sham merely because it was ultimately unsuccessful or because POME's legal activity caused some delay in the resolution of the case. Furthermore, Gayno made no showing at the dismissal hearing that POME's legal activities were undertaken primarily to harass Gayno or to accomplish some other improper objective.

Because by this opinion we have adopted a new rule for resolving a motion to dismiss based on the First Amendment right to petition for redress of grievances, and because the respondent court had no occasion to apply this rule in resolving POME's dismissal motion, we are directing the respondent court to reconsider POME's motion in light of this opinion. Specifically, the respondent court, after giving the parties a reasonable opportunity to present pertinent material, should treat POME's motion to dismiss Gayno's complaint as a motion for summary judgment. The respondent court must first determine whether Gayno has presented sufficient facts to permit the court to reasonably conclude that POME's C.R.C.P. 106 action was devoid of reasonable factual support or, if so supported, was lacking a cognizable basis in law. If the respondent court finds that this showing has been made, it must then determine whether Gayno has presented sufficient facts to permit the court to reasonably conclude that POME brought its C.R.C.P. 106 action primarily for harassment or some other improper purpose. Because the nature of POME's claim in the C.R.C.P. 106 action clearly had the capacity to adversely affect the legal interest of Gayno in its real estate development project, no further inquiry need be made into this aspect of the case. The respondent court should grant POME's motion to dismiss unless Gayno has satisfactorily established the other two components of the applicable standard.

The rule is made absolute and the respondent court is directed to reconsider the motion in accordance with the views expressed herein.