The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Stephen GRACE, Defendant–Appellant.

No. 00CA0114.

Colorado Court of Appeals, Div. III.

Dec. 20, 2001.

Rehearing Denied Feb. 21, 2002.

Certiorari Denied Oct. 15, 2002. *

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2001.

* Justice COATS does not participate,
  Justice KOURLIS would grant as to the following issue:

Whether the court of appeals erred in concluding that a defendant has a constitutional due process right to be present in person when the trial court and counsel respond to notes concerning questions of law from a jury during deliberations.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Stephen Grace, appeals the judgment of conviction entered on a jury verdict finding him guilty of distribution of a schedule II controlled substance and attempt to possess a schedule II controlled substance. We affirm.

In January 1999, while defendant was standing on a sidewalk, two undercover police officers made eye contact with him and asked him, using slang terminology, if anyone was selling drugs. Defendant entered the officers' unmarked car and directed them to an apartment where drugs could be bought. There, defendant encountered the woman who rented the apartment (the renter), who let him and the undercover officers inside. After their arrival, another man (the seller) entered the apartment. The under-cover officers had $20 to buy the drugs, and defendant gave one of the officers $7 to purchase some. The officer used his $20 and defendant's $7 to buy crack cocaine from the seller.

After the purchase was made by the undercover officer, a signal was given to other police officers waiting outside and they arrested defendant, the renter, and the seller. No drugs were found on defendant at the time of his arrest.

The case proceeded to trial and during jury deliberations, the court received two written requests from the jury. Defendant was absent during this portion of the proceeding, but his counsel was present and did not object to the court's responses.

### I. Defendant's Right To Be Present

Defendant contends he was denied his constitutional right to be present when the court responded to the requests from the jury during deliberations. We agree, but conclude the denial does not require reversal.

#### A. Constitutional Principles

An accused has a constitutional right to be present at trial, U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16, and this right applies at all critical stages of a criminal trial. *Luu v. People*, 841 P.2d 271 (Colo. 1992).

A communication between the court and the jury during deliberations constitutes a critical stage of a trial. *Key v. People*, 865 P.2d 822 (Colo.1994)(jury deliberations are a critical stage of trial for the purpose of analyzing a deprivation of the right to counsel).

Therefore, we conclude defendant had a constitutional right to be present while the trial court was communicating with the jury during deliberations, and that his constitutional right was denied.

#### B. Standard of Review

We next address the standard of review under which to analyze the deprivation. Defendant asserts that the appropriate standard of review is structural error, requiring automatic reversal under either the United

States Constitution, amendments VI and XIV, or the Colorado Constitution article II, §§ 16 and 25. We disagree.

■ There are two types of constitutional errors: structural errors and trial errors. A structural error is a defect affecting the framework within which the trial proceeds and requires automatic reversal. *Blecha v. People,* 962 P.2d 931 (Colo.1998). Examples of structural errors include the total deprivation of the right to counsel and a biased trial judge. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *see also Luu v. People, supra.*

■ A trial error is an error in the trial process itself. It is an error that "occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona v. Fulminante, supra,* 499 U.S. at 307–08, 111 S.Ct. at 1264, 113 L.Ed.2d at 330; *see also Blecha v. People, supra.* Examples of trial error include the giving of jury instructions containing an erroneous conclusive presumption, and a statement made by the prosecutor improperly commenting on the defendant's silence at trial. *See Arizona v. Fulminante, supra.*

■ The Colorado Supreme Court has not addressed the appropriate standard to apply under the Colorado Constitution when the defendant is deprived of his or her right to be present at trial. However, under the United States Constitution, such deprivations are analyzed under the harmless error standard. *Arizona v. Fulminante, supra* (citing *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)); *Luu v. People, supra.*

■ Under this standard, reversal is not required if the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Leonardo v. People,* 728 P.2d 1252 (Colo.1986). A constitutional error is harmless when the reviewing court is confident beyond a reasonable doubt that the error did not contribute to the verdict. *Griego v. People,* 19 P.3d 1 (Colo.2001).

■ If from a review of the entire record, there appears to be a reasonable probability the defendant could have been prejudiced, the error cannot be harmless. *Key v. People, supra.* "[I]f the court has properly responded to a jury's inquiry [during deliberations], there is no prejudice and the communication is necessarily harmless beyond a reasonable doubt." *People v. Romero, supra,* 767 P.2d at 784.

We conclude the same standard should be applied under the state constitution. Accordingly, we follow the United States Supreme Court and apply the harmless beyond a reasonable doubt standard for analyzing alleged deprivations of the right to be present when the court responds to questions posed by the jury during deliberations. *See People v. Romero,* 767 P.2d 782 (Colo.App.1988)(assuming there was constitutional error where trial court communicated with the jury without the defendant present; panel concluded error was harmless beyond a reasonable doubt because defense counsel was present, the court's response to the jury was correct, and counsel did not object to the response).

## C. Trial Court's Responses to the Jury's Requests

Defendant maintains that reversal is required here because the trial court responded to two written requests from the jury during its deliberations without bringing him before the court. We conclude defendant's absence was harmless beyond a reasonable doubt.

### 1. First Request

■ The jury's first written request stated: "We would like the copy of [the transcript of the officer's] previous statement [made at the preliminary hearing]." The jurors did not ask to have any portion of the trial transcript read back to them.

The trial court responded: "I cannot give you the copy you requested. It was not admitted into evidence."

■ A jury should not be shown exhibits that have not been admitted into evidence.

*People v. Bowman,* 738 P.2d 387 (Colo.App. 1987).

Because the jurors asked for a portion of the transcript from the preliminary hearing that had not been admitted into evidence, the trial court responded properly to the request. Defendant's presence would not have changed the court's response, and its response in his absence did not prejudice defendant. Thus, while defendant should have been present during the discussion of the jury's written request, we conclude his absence was harmless beyond a reasonable doubt. *See People v. Romero, supra.*

### 2. Second Request

■■■ The jury's second written request stated: "We're at a point where we are deadlocked on two issues. One person doesn't believe in the law and won't base a judgment on the law. What are our options?"

After conferring with counsel, the trial court sent the following response: "You should continue to deliberate to see if you can resolve the issues."

■■■ In responding to the jury regarding a possible deadlock, the trial court may not give an instruction that is potentially coercive. *People v. Raglin,* 21 P.3d 419 (Colo.App. 2000). However, the court may issue a modified-*Allen* instruction informing the jurors that: (1) they should attempt to reach a unanimous verdict; (2) each juror should decide the case for himself or herself after impartial consideration with the others; (3) they should not hesitate to re-examine their views and change their opinions if convinced they are incorrect; and (4) they should not surrender their honest convictions solely because of the opinions of other jurors or for the purpose of returning a verdict. *Allen v. People,* 660 P.2d 896 (Colo.1983); *see also* CJI–Crim. 38:14 (1983).

■■■ The trial court also must inform the jurors that they will be excused and a mistrial declared if they cannot reach a unanimous verdict. But, the exact wording of such instruction is within the discretion of the trial court. *People v. Raglin, supra; see also People v. Lewis,* 676 P.2d 682 (Colo.1984).

In *Raglin,* the jury submitted several notes to the trial court expressing concern about the possible bias of one juror and that juror's refusal to abide by the law in arriving at a decision. Over the defense's objection, the trial court submitted the following response:

> I would ask you at this time to please go back to the jury room and resume your deliberations. If after you have tried that you believe that you're unable to reach a unanimous verdict, you can let us know when you have decided that, and we'll go from there.

*People v. Raglin, supra,* 21 P.3d at 423. A panel of this court concluded no error had occurred under those circumstances.

Here, when the jury inquired about its options regarding a deadlock, the trial court's response to the request was appropriate and not unduly coercive. Although defendant was absent, his counsel was present and did not object to the court's response. *See People v. Vega,* 870 P.2d 549 (Colo.App.1993)(concluding any error was harmless when the trial court responded to jury questions posed during deliberations in the presence of defense counsel but without defendant present), *aff'd,* 893 P.2d 107 (Colo. 1995).

We therefore conclude that because the trial court's response was proper and defendant suffered no prejudice from his absence, any error caused by that absence during the jury's second communication with the court was harmless beyond a reasonable doubt.

### II.  Sufficiency of the Evidence

Defendant next contends there was insufficient evidence to support his convictions for distribution and attempted possession of cocaine. We disagree.

■■■ Challenges to the sufficiency of the evidence to support a criminal conviction require a reviewing court to determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable

doubt. *Taylor v. People*, 723 P.2d 131 (Colo. 1986).

### A. Distribution

■ As relevant here, the offense of distribution has the following elements and the jury was so instructed: (1) the defendant (2) knowingly (3) distributed (4) a schedule II controlled substance, cocaine. *See* § 18–18–405(1)(a), C.R.S.2001; CJI–Crim. 36:02 (1983). " 'Distribute' means to deliver other than by administering or dispensing a controlled substance, with or without remuneration." Section 18–18–102(11), C.R.S.2001; CJI–Crim. 36(5) (1983)(definitions); *cf.* § 12–22–303(12), C.R.S.2001 (defining "distribute" in the context of controlled substances regulation, such as licensing of druggists).

The jury also was instructed on the theory of complicity as follows:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, all of the following must be established beyond a reasonable doubt:

1. A crime must have been committed.

2. Another person must have committed all or part of the crime.

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.

4. The defendant must have had the intent to promote or facilitate the commission of the crime.

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

Culpability based on complicity means:

A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.

Section 18–1–603, C.R.S.2001; *see also* CJI–Crim. 6:04 (1983).

As relevant here, § 18–1–604(1), C.R.S. 2001, establishes an exemption from liability based upon a criminal offense committed by another. It states that "a person shall not be legally accountable for behavior of another constituting an offense if . . . the offense is so defined that his conduct is inevitably incidental to its commission."

Here, defendant claimed that he never assisted or aided the seller but only assisted the officers who were purchasers, and therefore that his conduct was incidental to the commission of the crime. Accordingly, the issue was whether defendant's conduct in assisting the sale of the drugs to the undercover agents was inevitably incident to the seller's commission of the crime of distribution. *See People v. Hart*, 787 P.2d 186 (Colo. App.1989).

According to the People's evidence, the offense of distribution was committed when the seller sold the drugs to the undercover officer. There was testimony that the undercover officers asked defendant where they could buy drugs, that defendant aided the seller by directing the officers to a location where they could purchase drugs, that defendant took the officers there, and that defendant knew the person who contacted the seller.

These facts, viewed in the light most favorable to the prosecution, were sufficient to indicate that defendant had knowledge of the seller's intent illegally to distribute drugs to the officers, and that defendant intended to facilitate and aid the illegal distribution by bringing the undercover officers to the apartment. *See People v. Fenninger*, 191 Colo. 334, 552 P.2d 1018 (1976)(the middleman in a drug transaction can be liable as a complicitor if acting for the seller).

Accordingly, we reject defendant's contention that there was insufficient evidence to support his conviction for distribution.

### B. Attempted Possession

■ As relevant here, the elements of attempted possession are that: (1) the defendant (2) knowingly (3) engaged in conduct constituting a substantial step toward the commission of possession of a controlled substance. *See* § 18–2–101(1), C.R.S.2001; CJI–Crim. 8:01 (1983).

"A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 18–2–101(1); CJI–Crim. 8(2) (1983)(definitions).

The offense of possession of a controlled substance consists of the following elements: (1) the defendant (2) knowingly (3) possessed (4) a controlled substance. Section 18–18–405(1)(a); CJI–Crim. 36:02 (1983).

Here, after directing the officers to the apartment where they could buy the drugs, defendant gave them $7. Testimony from the officers showed, and on appeal defendant admits, that his purpose in combining his money with the officers' money was to obtain crack cocaine. Although no drugs were found on defendant when he was arrested, one of the officers testified he offered defendant a piece of the crack cocaine, which defendant took.

We conclude these facts are sufficient to support the jury's determination that defendant took a substantial step towards possessing a controlled substance when he gave the officers money to buy crack cocaine. Therefore, we reject defendant's contention that there was insufficient evidence to support his conviction for attempted possession of a controlled substance.

### III.   Chain of Custody

■ Defendant's final contention is that his convictions must be vacated because an insufficient chain of custody established the piece of crack cocaine admitted into evidence was the actual piece purchased by the officers. Again, we disagree.

■ The chain of custody rule requires that the proponent of physical evidence connect it to the incident and show the evidence is substantially unchanged. *People v. Herrera*, 1 P.3d 234 (Colo.App.1999). Once physical evidence is admitted on a proper foundation, imperfections in the chain of custody go to the weight of the evidence.

** Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. VI, § 5(3), and

*People v. Lesslie*, 939 P.2d 443 (Colo.App. 1996).

The requirement that the physical evidence be authentic is satisfied if evidence supports a finding that the item is what its proponent claims. CRE 901(a). This requirement can be satisfied by testimony that the particular evidence is what it is claimed to be. *See* CRE 901(b)(1).

One of the officers testified that he gave the piece of crack cocaine purchased at the apartment to another officer (the second officer) who placed it in a bag. According to the testifying officer, he was "very comfortable that [they] followed the procedures" in storing the evidence. He testified that when proper police procedures are used, the officer who seizes the drugs places them in a bag and then gives the bag to a second officer who seals the bag. The second officer fills out an envelope identifying where and from whom the drugs were seized and then places the sealed bag in the envelope. The testifying officer stated he was "confident" the piece of crack cocaine admitted at trial was the piece seized at the crime scene.

Nothing in the record suggests the drugs were altered. The trial testimony traced the chain of custody of the drugs, the envelope in evidence contained the bag of crack cocaine, and the following information was written on the envelope: the second officer's name and badge number; the contents ("suspected 'crack' cocaine"); the location of the seizure; and the person from whom the drugs were seized. Under these circumstances, we conclude the chain of custody was sufficiently established.

Judgment affirmed.

NIETO and KIRSHBAUM,** JJ., concur.

§ 24–51–1105, C.R.S.2001.