The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Lewis Paul RICHARDSON,
Defendant–Appellant.

No. 04CA2121.

Colorado Court of Appeals,
Div. V.

Sept. 20, 2007.

Certiorari Denied April 28, 2008.

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Lewis Paul Richardson, appeals the judgments of conviction imposed upon jury verdicts finding him guilty of forgery, possession of forgery devices, wrongful possession of a journal or seal, violation of a restraining order, harassment by stalking, and offering a false instrument for recording.

He also appeals the enhancement of his sentence for stalking. We affirm.

In this case, we are primarily called upon to determine whether a person may be prosecuted for stalking based in part on the person's filing lawsuits against another individual.

Defendant had been friends with the victim for nearly ten years before he was implicated in committing, and in falsely accusing another of committing, an act of vandalism against the victim's property. Defendant, who had previously expressed a romantic interest in the victim, was arrested and pled nolo contendere to a charge of false reporting.

A series of restraining orders was issued, prohibiting defendant from contacting the victim. Nonetheless, defendant contacted the victim through letters and telephone calls. Over the next year, he repeatedly threatened to overwhelm her with lawsuits and bring her to financial ruin if she would not communicate with him. In one letter, he wrote:

> If I file ten lawsuits and win only one of them then I will still get my revenge because that one lawsuit will be for $5,000, $10,000, or maybe even $20,000. That alone will trash your credit score & give you a severe financial crisis. Meanwhile, the other nine lawsuits are going to drain your pocketbook, just in legal fees.

Indeed, defendant filed pro se thirteen lawsuits against the victim, in Arapahoe, Denver, and Park Counties. The prosecution presented evidence that the victim was initially unaware of these lawsuits and that some of defendant's notarized attestations of service of process had been forged. Defendant was also found to be in possession of (1) computer disks containing a scanned signature of the victim and digitized notary seals; (2) forged or manufactured legal documents; and (3) other documents purporting to bear the victim's signature.

In the thirteen cases, defendant obtained two default judgments (which the victim subsequently was able to get vacated); otherwise, his claims were either abandoned or dismissed for lack of proper service.

This case was prosecuted in Park County, even though some of defendant's acts, including those underlying the charges for wrongfully possessing forgery devices and a journal or seal, occurred elsewhere. Defendant was convicted as charged, pled guilty to four habitual criminal counts, and was sentenced to an aggregate term of thirty years imprisonment.

## I. Constitutionality of Stalking Provisions

Defendant contends that his conviction and enhanced sentence for stalking are constitutionally infirm because section 18–9–111(4)(b)(III) and (5)(b), C.R.S.2007, are vague and overbroad, both on their face and as applied to the facts of this case. We disagree.

Vague laws "offend due process because they fail to give fair notice of the conduct prohibited and do not supply adequate standards to those who apply them to prevent arbitrary and discriminatory enforcement." *People v. McIntier*, 134 P.3d 467, 474 (Colo.App.2005).

"A statute which proscribes conduct which can be prohibited under the police power of the state is overbroad if it also purports to proscribe conduct which cannot validly be prohibited under that power." *People v. Sequin*, 199 Colo. 381, 384, 609 P.2d 622, 624 (1980). "A statute is facially overbroad if, in addition to proscribing conduct that is not constitutionally protected, its proscriptions sweep in a substantial amount of activity that is constitutionally protected." *People v. Pahl*, 169 P.3d 169, 188 (Colo.App. 2006).

With these principles in mind, we turn to defendant's contentions.

### A. Facial Challenges

Section 18–9–111(4)(b)(III) provides as relevant here:

> A person commits stalking if directly, or indirectly through another person, such person knowingly:
>
> . . .
>
> Repeatedly follows, approaches, contacts, places under surveillance, or makes any

form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress.

Defendant asserts that this provision is on its face (1) vague because the "manner" in which someone could cause another serious emotional distress is "limitless"; and (2) overbroad because the limitless nature of the "manner" in which a person may cause "serious emotional distress" operates to "sweep within its proscriptions a substantial amount of constitutionally protected speech and conduct."

■ In *People v. Cross,* 127 P.3d 71 (Colo. 2006), the supreme court determined that § 18–9–111(4)(b)(III) is neither vague nor overbroad on its face. In discussing the type of conduct encompassed by the statute, the court recognized that the legislature meant to criminalize only conduct which involves a "severe intrusion[s] upon the victim's personal privacy and autonomy, *with an immediate and long-lasting impact on quality of life as well as risks to security and safety of the victim and persons close to the victim.*" *People v. Cross,* 127 P.3d at 79 (quoting § 18–9–111(4)(a), C.R.S.2007)(emphasis added). And because "a reasonable person could know that the only acts prohibited are those that would cause a reasonable person to suffer serious emotional distress and do in fact cause such distress," the statute allows citizens of common intelligence to gauge their behavior accordingly and provides a nonarbitrary standard for enforcement. *People v. Cross,* 127 P.3d at 78. Thus, the statute is not unconstitutionally vague on its face. *Id.*

■ With respect to the overbreadth argument, the supreme court in *Cross* determined that, inasmuch as the statute criminalizes only acts of a particular nature (acts involving "highly inappropriate intensity, persistence, and possessiveness," severely intruding upon a victim's "personal privacy and autonomy," § 18–9–111(4)(a) ) and having a particular effect (objectively and subjectively causing "serious emotional distress," § 18–9–111(4)(b)(III) ), its sweep would not include a substantial amount of constitutionally regulated speech. Thus, the statute is not unconstitutionally overbroad on its face. *People v. Cross,* 127 P.3d at 79.

■ A corollary of the *Cross* holding, of course, is that section 18–9–111(4)(b)(III) need not expressly exempt from its coverage constitutionally protected activity to survive an overbreadth challenge.

We recognize that in *Cross* the supreme court was not asked to assess the constitutional effect of the term "manner." But the supreme court was asked to assess the constitutionality of the phrase ("in a manner that would cause a reasonable person to suffer serious emotional distress") which included that word. When the supreme court found no constitutional infirmity with the phrase, it necessarily rejected, as do we, defendant's facial challenges to the validity of section 18–9–111(4)(b)(III). *See People v. Cross,* 127 P.3d at 78–79.

Defendant also challenges the facial validity of section 18–9–111(5)(b), which provides in relevant part, "If, at the time of the offense, there was a temporary or permanent protective order ... in effect against such person prohibiting the behavior described in [section 18–9–111(4)(b)(III) ], such person commits a class 4 felony." We reject defendant's challenge, however, inasmuch as it is based upon a premise which we have already rejected, that is, that section 18–9–111(4)(b)(III) is invalid on its face.

## B. As Applied Challenges

■ Defendant also contends that section 18–9–111(4)(b)(III) and (5)(b) were unconstitutionally applied because the prosecution's stalking charge was based in part on the thirteen lawsuits he filed in three separate counties against the victim. According to defendant, he was impermissibly convicted for exercising his First Amendment right to petition the courts for redress of grievances. We are not persuaded.

Initially, we note that defendant concedes that the filing of a lawsuit, the existence of which becomes known to the party against whom the lawsuit was filed, constitutes a direct or indirect "form of communication"

with that party, under section 18–9–111(4)(b)(III). In addition, defendant does not assert that there was insufficient evidence that the filing of his lawsuits became known to the victim.

Properly analyzed, then, defendant's contention here is not one of vagueness, but of overbreadth.

█ The constitutional right to petition the government for a redress of grievances includes the right of access to the courts. *See Protect Our Mountain Env't, Inc. v. Dist. Court,* 677 P.2d 1361, 1365 (Colo.1984) *(POME).* However, "[t]he First Amendment does not grant a license to use the courts for improper purposes." *Id.* at 1366.

█ In this regard, the First Amendment does not immunize a person's pursuit of baseless, frivolous, or vexatious litigation. *See Id.* (baseless or frivolous litigation); *Wolfe v. George,* 486 F.3d 1120, 1126 (9th Cir.2007) ("the state has an interest in protecting defendants from harassment by frivolous litigation, just as it has an interest in protecting people from stalking"); *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1298 (11th Cir. 2002) ("A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation."); *Grundstein v. Ohio,* No. 1:06 CV 2381, 2006 WL 3499990 (N.D.Ohio Dec.5, 2006)(unpublished memorandum of opinion and order) ("vexatious or harassing litigation is not immunized by the First Amendment and can be regulated by the states").

█ Litigation is (1) baseless, if it is devoid of reasonable factual support or lacking in any cognizable basis in law, *POME,* 677 P.2d at 1369; (2) frivolous, if unsupported by rational argument based in the evidence or law, *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984) (applying attorney fee provisions of § 13–17–102, C.R.S.2007); and (3) vexatious, if brought or maintained in bad faith to annoy or harass another. *Bockar v. Patterson,* 899 P.2d 233, 235 (Colo.App.1994)(applying attorney fee provisions of § 13–17–102; vexatiousness includes "conduct that is arbitrary, abu-

sive, stubbornly litigious, or disrespectful of truth").

Here, defendant asserts that no determination was made that his lawsuits against the victim were baseless or frivolous. However, the prosecution's theory was that defendant filed the lawsuits in bad faith with the intent to harass the victim into forcing her to communicate with him. And, when viewed in the light most favorable to the prosecution, the evidence supports the conclusion that defendant engaged in a pattern of vexatious litigation by intentionally filing all but one of the thirteen lawsuits without notice to the victim to put her at a significant legal disadvantage, deprive her of her property without due process of law, and cause her serious emotional distress once she learned of the filings.

Because the constitutional right to access to the courts does not encompass a right to file lawsuits abusively in a manner designed to deprive another of effective access to the courts in his or her own defense, we conclude that defendant's activity in intentionally filing lawsuits without notice to the victim, with the intention to use them to harass her and cause her serious emotional distress, was not constitutionally protected. Accordingly, defendant's "as applied" challenge to section 18–9–111(4)(b)(III) and (5)(b) fails.

## II. Venue

█ Next, defendant contends that Park County was not the proper venue in which to prosecute the possession of forgery devices and possession of journal or seal charges and that, consequently, the convictions entered on those charges must be vacated. We disagree.

The charges and convictions were based on defendant's possession of the computer disks containing the scanned signature of the victim and digitized notary seals. Those disks had been seized from defendant in a search incident to an arrest for a parole violation in Arapahoe County.

Section 18–1–202(7)(a), C.R.S.2007, provides:

> When multiple crimes are based upon the same act or series of acts arising from the same criminal episode and are committed

in several counties, the offender may be tried in any county in which any one of the individual crimes could have been tried, regardless of whether or not the counties are in the same judicial district.

Here, the trial court found that the disks could have been used "for the purposes alleged in Count Six [offering a false instrument for recording], and perhaps even in Count Five [stalking]," both of which were alleged to have occurred in Park County.

We discern no error in the trial court's ruling. In *People v. Rogers*, 742 P.2d 912, 918 (Colo.1987), the supreme court noted, in the context of a compulsory joinder issue, that the "same criminal episode" encompasses "offenses connected in such a manner that prosecution of the offenses will involve substantially interrelated proof." Elaborating further, the court stated, crimes involving interrelated proof are "[c]rimes that are committed simultaneously or in close sequence, crimes that occur in the same or closely related place, and acts that form part of the schematic whole." *Id.* at 919.

In this case, the computer disks were seized from defendant only a little more than a week after the date on which it was alleged in count six that he filed a fraudulent document in Park County. Because these circumstances permit a reasonable inference that defendant had used those disks in committing the Park County offense listed in count six, Park County was a proper venue to try the challenged counts. *See People v. Reed*, 132 P.3d 347, 351 (Colo.2006) (illegal possession of an item at the time of a defendant's arrest "may have circumstantial value in establishing possession during the earlier episode").

## III. Sufficiency of the Evidence

We reject defendant's contention that insufficient evidence was presented to support his convictions for forgery and offering a false instrument for recording.

When examining the sufficiency of evidence, we determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. *People v. Smith*, 121 P.3d 243, 247 (Colo.App.2005).

Here, the jury could reasonably infer that defendant's forging, and then filing, a proof of service with a court was done with intent to defraud the victim in this case from evidence that (1) a forged proof of service could be used to obtain a default judgment against another person, and (2) defendant obtained default judgments against the victim. *See People v. Miralda*, 981 P.2d 676, 679 (Colo. App.1999) ("Intent may, of course, be established from circumstantial evidence and from the inferences that may reasonably be drawn from those circumstances.").

## IV. Defendant's Right to Be Present

We are also unpersuaded by defendant's contention that the trial court committed reversible error when, in his absence, the court heard arguments on, and ruled on (1) a motion for continuance and (2) the response to be given to a jury question.

A week before trial, the parties held a phone conference to discuss with the court a defense motion to continue. Because defendant was in jail at the time, he was not present during the discussion. However, defense counsel noted that he had spoken with defendant, who had authorized counsel to waive his right to speedy trial to obtain the continuance, which the court did not grant.

In addition, during jury deliberations, the jurors asked a question concerning the term "knowingly" in one of the jury instructions. After conferring with both counsel and noting that defendant was not present, the trial court responded by informing the jury that "knowingly" did not have the meaning suggested by the jury's question.

A defendant has a due process right to be present at every critical stage of a criminal proceeding. *People v. Harris*, 914 P.2d 434, 437 (Colo.App.1995). "However, due process does not require the defendant's presence when it would be useless or only slightly beneficial." *People v. Isom*, 140 P.3d 100, 104 (Colo.App.2005). Where a defendant has been deprived of his or her right to be present, reversal is required unless the

error is adjudged to be harmless. *People v. Grace*, 55 P.3d 165, 169 (Colo.App.2001).

■ Here, we perceive no deprivation of defendant's right to be present, as a result of his absence from the hearing on the continuance motion. Because the asserted ground for the continuance was defense counsel's unpreparedness, there was no reason the trial court would need to consult defendant to determine whether counsel was or could be adequately prepared to go to trial on time. And, the trial court's rejection, at that time, of defendant's pro se motions regarding discovery did not cause the conference to become a critical stage of trial. *See People v. Arko*, 159 P.3d 713, 717–18 (Colo. App.2006) (a trial court may properly require that a represented defendant file motions through his or her attorney).

It does not appear that defendant's presence would have been useful, and thus that he had a right to be present, when the court responded to the jury's inquiry. *Compare People v. Isom*, 140 P.3d at 104 (defendant had no right to be present when court decided to allow jury to review a videotape), *and Esnault v. Colorado*, 980 F.2d 1335, 1337 (10th Cir.1992) (defendant had no right to be present where court responded to the jury in writing and jury was not convened in open court to hear answer), *with People v. Grace*, 55 P.3d at 168–69 (defendant had right to be present when court responded to requests from jury during deliberations).

■ Nonetheless, we conclude that any error in this regard was harmless because the court's response was proper and defendant suffered no prejudice from his absence. *See People v. Grace*, 55 P.3d at 170.

### V. *Evidentiary Issues*

Finally, defendant contends that the trial court committed reversible error by improperly admitting (1) expert testimony on the methodology of stalkers, (2) unfairly prejudicial, prior bad act evidence, and (3) evidence for which the chain of custody had not been established. We disagree with all three contentions.

A trial court's decision to admit evidence is reviewed for an abuse of discretion and will only be overturned if the decision was arbitrary, unreasonable, or unfair. *People v. James*, 117 P.3d 91, 94 (Colo.App.2004).

■ For the following reasons, we perceive no abuse of discretion, or reversible error, on the part of the trial court:

● The expert's opinion was shown to be sufficiently reliable and relevant to the issues in the case, and it rested on objective tests and an analysis of conduct outside the normative behaviors of law abiding citizens. *Cf. Masters v. People*, 58 P.3d 979, 993–94 (Colo.2002) (upholding admission of expert testimony on motivation and behavior of individuals who commit sexual homicides).

● Most of the "other bad acts" evidence was admissible to explain the background for or the context of the crimes charged. *Cf. People v. Fears*, 962 P.2d 272, 280 (Colo.App.1997) (evidence of robbery committed months before murders admissible as res gestae evidence to give context to the murders).

● The remainder of the "other bad acts" evidence, which concerned defendant's possession of pornographic materials and lengthy criminal history, was admitted without objection; neither the two brief references to the pornography, which the prosecution did not rely on, nor the references to defendant's criminal history, which defendant freely admitted when he took the stand in his own defense, undermines our confidence in the reliability of the conviction. *See* Crim. P. 52(b) (appellate court may notice "plain errors" even though "they were not brought to the attention of the court"); *People v. Taylor*, 159 P.3d 730, 738–39 (Colo.App. 2006) (plain error is error that is obvious and that "so undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the conviction").

● Defendant did not object to evidence on the ground of a lack of chain of custody, and defendant's objection simply to a "lack of foundation" fails to preserve the chain of custody issue for review. *See*

*People v. Reynolds,* 194 Colo. 543, 549, 575 P.2d 1286, 1291 (1978).

Because we conclude that there was a sufficient chain of custody shown and that the discrepancies identified by defendant impact the weight, not the admissibility, of the evidence, we perceive no error, much less plain error, in its admission. *See People v. Herrera,* 1 P.3d 234, 240 (Colo.App. 1999).

The judgments and sentence are affirmed.

Judge CARPARELLI and Judge TERRY concur.