**The PEOPLE of the State of Colorado, Complainant**

v.

**Steven James FOSTER, Respondent.**

**No. 08PDJ090.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 6, 2011.

This matter is before the Hearing Board, composed of DOUGLAS D. PIERSEL, JAMES X. QUINN, both members of the bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), on remand from the Colorado Supreme Court ("Supreme Court"). The Supreme Court asked the Hearing Board to redetermine the appropriate sanction to impose upon Steven James Foster ("Respondent") for his violation of Colo. RPC 3.1 and 8.4(d). The parties agreed a hearing was unnecessary and they asked the Hearing Board to consider the question of sanctions based on their written submissions. Accordingly, Kim E. Ikeler of the Office of Attorney Regulation Counsel ("the People") filed "Complainant's Sanctions Hearing Brief" on August 9, 2011, and Respondent filed "Respondent's Sanctions Hearing Brief" pro se on September 21, 2011. The Hearing Board now issues the following "Opinion and Decision on Remand Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)." [1] Taking into account all relevant factors, the Hearing Board determines that public censure is warranted.

1. Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 9, 1991, under attorney registration number 20400. He is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings. *See* C.R.C.P. 251.1(b).

## OPINION AND DECISION ON REMAND IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. BACKGROUND

Respondent married his former wife, Sherrie Nunn ("Nunn"), on March 14, 1991. Throughout their marriage, Respondent practiced law while Nunn practiced optometry. They raised two daughters, both minors at the time Nunn filed for dissolution of their marriage on March 26, 1999. Initially, both Nunn and Respondent appeared with experienced counsel in the dissolution proceedings. While represented by counsel, Respondent and Nunn reached a stipulation before permanent orders that addressed child support and other issues. On July 13, 2000, following a four-day hearing, the district court issued its permanent orders and decree of dissolution. Shortly thereafter, Respondent's attorney withdrew from the case, and Respondent appeared pro se in the ensuing post-dissolution proceedings. After six years of litigating post-dissolution issues in the district and appellate courts, Respondent filed a sixth appeal. In that appeal, Respondent reasserted two claims from earlier appeals of the dissolution proceedings in which he contended that (1) the district court improperly valued Nunn's marital assets; and (2) the district court judge should have been disqualified for bias.

On September 16, 2008, the People filed a complaint against Respondent, alleging that he violated Colo. RPC 3.1 and 8.4(d) by filing his sixth appeal and that his conduct over the course of nine years violated Colo. RPC 8.4(d). Respondent filed an answer on Octo-

ber 20, 2008. He then filed a motion for summary judgment on November 28, 2008, which the PDJ denied.[2]

On May 5, 2009, the Hearing Board commenced a three-day C.R.C.P. 251.18 hearing. Kim E. Ikeler appeared on behalf of the People, and Gary S. Cohen appeared on behalf of Respondent, who also appeared.

On March 25, 2010, the Hearing Board issued a "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)." The Hearing Board concluded that Respondent violated Colo. RPC 3.1 and 8.4(d) by raising the valuation and bias issues in his sixth appeal. The Hearing Board also found that Respondent's aggregate conduct over the course of the litigation had a cumulative prejudicial effect on the administration of justice in violation of Colo. RPC 8.4(d). The Hearing Board rejected Respondent's First Amendment defense and suspended Respondent from the practice of law for a year and a day, all but ninety days stayed upon the successful completion of a two-year period of probation, and ordered Respondent to pay the costs of the disciplinary proceedings. Respondent appealed to the Supreme Court the Hearing Board's imposition of sanctions and the PDJ's denial of his motion for summary judgment.

On May 23, 2011, the Supreme Court issued an opinion reversing the Hearing Board's determinations that Respondent's aggregate conduct violated Colo. RPC 8.4(d) [3] and that Respondent's reassertion of the valuation issue in his sixth appeal violated Colo. RPC 3.1 and 8.4(d).[4]

---

**2.** Respondent relied on *In re Green*, 11 P.3d 1078 (Colo.2000) and *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) (*"POME"*) in this motion for summary judgment in support of the position that his conduct was constitutionally protected. Although the PDJ denied the motion, he allowed Respondent to present this argument to the Hearing Board for its consideration.

**3.** *In re Foster*, 253 P.3d 1244, 1256 (Colo.2011). The Supreme Court held that Respondent's aggregate conduct was protected by his First Amendment right to petition. *Id.* The Supreme Court further held that, in response to Respondent's motion for summary judgment, the People should have been required to make a prima facie showing under *POME* that Respondent's aggre-

gate conduct was not protected by the First Amendment. *Id.*

**4.** *Id.* at 1257–58. The Supreme Court found that Respondent's reassertion of the valuation issue in his sixth appeal was protected by his First Amendment right to petition because it was "not so obviously duplicative" of previous arguments or "so lacking in merit that [Respondent's] proffered motivation for asserting [the valuation argument]—namely, to win a favorable ruling on a critical issue in his case—was so wholly unbelievable or incredible that it could not have been true as a matter of law." *Id.* at 1257. The Supreme Court further held that the People again should have been required to make a prima facie showing under *POME* in response to Respondent's First Amendment defense. *Id.*

The Supreme Court, however, affirmed the Hearing Board's original findings of facts and rule violations regarding Respondent's reassertion of the bias issue in his sixth appeal. Specifically, the Supreme Court wrote:

> Based on the record, it appears that [Respondent] asserted in his fifth appeal that the district court judge presiding over his case was biased against [Respondent] and erred by failing to disqualify himself sua sponte. The court of appeals held that [Respondent] had waived the bias claims by, among other things, failing to file a C.R.C.P. 97 recusal motion. The court also broadly rejected the substance of [Respondent's] bias claims, concluding notwithstanding the waiver that there was no evidence of bias.
>
> [Respondent] then filed a C.R.C.P. 97 motion, which the district court denied, and then filed his sixth appeal, in which he again contended that the district court judge failed to disqualify himself sua sponte for many of the same reasons asserted and rejected in [Respondent's] fifth appeal. Unlike the valuation issue, this was not a situation where new circumstances or new evidence could possibly have led to a different result; [Respondent] simply asserted the same arguments to the same court for a second time.
>
> Given the court of appeals' ruling in the fifth appeal that the arguments were not only meritless, but also frivolous and vexatious, we find [Respondent's] proffered motivation for reasserting them dubious. Given the overall sophistication of [Respondent's] arguments throughout the litigation below, [Respondent's] suggestion that he honestly believed he could obtain favorable legal relief by flatly reasserting arguments already deemed frivolous, and for which he had already been ordered to pay Nunn's attorney fees, is implausible. Rather, as [Respondent] himself admitted at the disciplinary hearing, he believed prior to filing the appeal that the court of appeals was "tired of hearing from [him]"

and "[was] not going to rule in [his] favor no matter what the law." [5]

The Supreme Court found both that Respondent "reasserted [the bias issue] on appeal without any subjectively proper motivation of obtaining favorable relief" and that Respondent's "reassertion of precisely the same issue without any reason to expect a different result is the very definition of an objectively baseless claim." [6] "Because [his] reassertion of the bias issue in his sixth appeal was both objectively baseless and subjectively motivated by an improper purpose as a matter of law," the Supreme Court concluded Respondent's reassertion "was not protected by his First Amendment right to petition regardless of his status as an attorney." [7] Accordingly, the Supreme Court affirmed "the Board's conclusion that [Respondent] violated Colo. RPC 3.1 and 8.4(d) by asserting a frivolous claim of bias in his sixth appeal, which constituted conduct prejudicial to the administration of justice." [8]

The Hearing Board did not apportion sanctions among Respondent's aggregate conduct, his reassertion of the valuation issue in his sixth appeal, and his reassertion of the bias claim in his sixth appeal. Therefore, the Supreme Court remanded this matter to the Hearing Board for a redetermination of the appropriate sanction for Respondent's violation of Colo. RPC 3.1 and 8.4(d) by reasserting that the trial court was biased in his sixth appeal.[9] This is the only issue before us on remand.

## II. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Supreme Court case law govern the selection and imposition of sanctions for lawyer misconduct. ABA *Standard* 3.0 mandates that, in selecting the appropriate sanction, the Hearing Board must consider the duty breached, Respondent's mental state, the in-

---

5. *Id.* at 1258.

6. *Id.*

7. *Id.*

8. *Id.* at 1259.

9. *Id.* at 1259–60. The Supreme Court rejected Respondent's contention that he could only be disciplined for his entire sixth appeal or not at all. *Id.* at 1259.

jury or potential injury caused, and the aggravating and mitigating evidence.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* The Hearing Board finds Respondent violated his duties to the legal system as an officer of the court. Respondent reasserted the bias issue in his sixth appeal without any subjectively or objectively proper motivation of obtaining favorable relief. His misconduct was contrary to his duties to abide by the rules of substance and procedure that shape the administration of justice.

*Mental State:* The Hearing Board finds that Respondent filed his sixth appeal with intent; that is, his conscious objective was to file an appeal seeking disqualification, even though he had no subjectively proper motivation of obtaining favorable relief.[10] The Hearing Board further finds that Respondent reasserted the bias issue in this appeal with the primary purpose of harassing and vexing Nunn.[11]

*Injury:* Respondent caused the court of appeals and Nunn to expend unnecessary time and resources by advancing the frivolous bias claim in his sixth appeal.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances are any factors that may justify an increase in the degree of discipline to be imposed, and mitigating circumstances are any considerations or factors that may justify a reduction in the severity of the sanction. The Hearing Board considers evidence of the following aggravating and mitigating circumstances in determining the appropriate sanction.[12]

10. *See id.* at 1258.

11. *See id.* (finding Respondent's motivation for once again raising the bias issue in his sixth appeal subjectively improper as a matter of law); *see also POME*, 677 P.2d at 1367 (noting the sham exception, in addition to requiring a showing of baseless litigation, "requires a claimant suing another for prior petitioning activity to show that the petitioning activity was conducted primarily for harassment or other improper activity").

12. The Hearing Board considered a number of aggravating and mitigating factors in determining the appropriate sanction in its decision and order dated March 25, 2010. However, some of

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Respondent still maintains the district court judge ruled against him because of bias and a bent of mind that precluded him from obtaining a fair hearing. He also contends the district court and appellate courts were wrong on each of the issues he appealed.[13]

*Substantial Experience in the Practice of Law—9.22(i):* We consider in aggravation that Respondent has been licensed for over twenty years in Colorado. We note, however, that Respondent's background and experience is in estate planning and tax law, not domestic relations law.

*Absence of a Prior Disciplinary Record—9.32(b):* Respondent has no prior disciplinary record, and the Hearing Board gives substantial mitigating weight to this factor in arriving at an appropriate sanction.

*Personal or Emotional Problems—9.32(c):* Respondent was hospitalized for six weeks for an acute depression in the early stages of the dissolution proceedings. Respondent was emotionally distraught and had great difficulty with concentrating at that time. As a result, he took prescription medications and attended group therapy to deal with issues related to the dissolution, including his continued relationship with his daughters. We note that Respondent filed his sixth appeal many years after his hospitalization, but we nevertheless find that these circumstances should be accorded minimal weight in mitigation.

*Cooperative Attitude Toward Proceedings—9.32(e):* Respondent demonstrated a cooperative attitude in these proceedings to-

those factors were premised upon the Hearing Board's finding that the cumulative effect of Respondent's aggregate conduct over the course of eight years of litigation was prejudicial to the administration of justice—a claim that was dismissed by the Supreme Court. Thus, the Hearing Board considers only those factors relevant to the imposition of a sanction for Respondent's single violation of Colo. RPC 3.1 and 8.4(d).

13. The Hearing Board notes that, in his sanctions hearing brief, Respondent also maintains that the Supreme Court incorrectly ruled upon his appeal.

ward both the People and the Hearing Board. We regard this as a factor mitigating Respondent's misconduct.

*Imposition of Other Penalties or Sanctions—9.32(k):* The court of appeals determined Respondent's sixth appeal was vexatious and remanded it for attorney's fees and costs. This monetary sanction mitigates the sanction we impose.

### Sanctions Analysis Under ABA *Standards* and Case Law

ABA *Standard* 6.22, which governs violations of Colo. RPC 3.1 and 8.4(d), calls for suspension in cases when a lawyer knowingly violates a court order or rule, resulting in injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.[14] In contrast, ABA *Standard* 6.23 provides that public censure "is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding."

In several cases involving the filing of frivolous motions, the Supreme Court has imposed a public censure or modest suspension on the offending attorney. In *People v. Fitzgibbons,* the Supreme Court publicly censured an attorney who filed a frivolous lawsuit on his and his wife's behalf in a mortgage-related dispute.[15] Likewise, in *People v. Thomas,* the Supreme Court publicly censured an attorney who filed a motion for summary judgment deemed by one judge to be frivolous, and who then re-filed essentially the same motion with a second judge.[16]

In comparison, the Supreme Court found in *People v. Barnthouse* that suspension for one year and one day was an appropriate sanction for a lawyer who, while representing himself in his own dissolution matter, filed a false financial affidavit with the court, willfully disobeyed court orders requiring the transfer of his property, accused his wife's lawyer and guardian *ad litem* of perjury in pleadings, and filed duplicative motions in an effort to remove the guardian *ad litem* solely for the purpose of harassing his wife and her counsel.[17] While *Barnthouse* is instructive, we find that Respondent's conduct here is not as egregious, since Respondent did not commit dishonest acts, as did the lawyer in *Barnthouse.*

Although a suspension is the presumptive sanction in this matter under the ABA *Standards,* we are mindful of the Supreme Court's directive that we must carefully apply the aggravating and mitigating factors in each case.[18] Here, Respondent's unblemished record over his twenty years of practice is a mitigating factor of significant weight. We are equally impressed with Respondent's cooperative attitude throughout the disciplinary proceedings. Accordingly, we find that a public censure is the appropriate sanction for Respondent's improper reassertion of the bias issue in his sixth appeal.

### III. CONCLUSION

Respondent's deliberate and frivolous relitigation in a sixth appeal of his earlier-appealed claim of judicial bias in post-dissolution proceedings violated the Rules of Professional Conduct. In light of the several mitigating factors at work here, the Hearing Board finds it appropriate to publicly censure Respondent.

### IV. ORDER

The Hearing Board therefore **ORDERS:**

14. The preface to ABA *Standard* 6.0 makes clear that this standard is relevant to cases involving failure to bring a meritorious claim.

15. 909 P.2d 1098, 1102–05 (Colo.1996).

16. 925 P.2d 1081, 1083 (Colo.1996); *see also People v. Smith,* 937 P.2d 724, 725 (Colo.1997) (suspending attorney for a nine-month period for filing a frivolous petition and appeal in reciprocal discipline proceeding originating in the Tenth Circuit); *People v. Hartman,* 744 P.2d 482, 483 (Colo.1987) (suspending attorney for six months

for filing frivolous pleadings and failing to report his suspension to disciplinary authorities in reciprocal discipline proceeding originating in the United States Tax Court).

17. 775 P.2d 545, 547–50 (Colo.1989).

18. *In re Fischer,* 89 P.3d 817, 822 (Colo.2004) (finding that a hearing board had overemphasized a presumption of disbarment and undervalued the importance of mitigating factors in determining the needs of the public).

1. Steven James Foster, Attorney Registration Number 20400, is **PUBLICLY CENSURED.** The public censure **SHALL** take effect only upon issuance of an "Order and Notice of Public Censure." [19]

2. Respondent **SHALL** file any post-hearing motions or application for stay pending appeal with the PDJ **on or before Tuesday, December 27, 2011.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within five days, unless otherwise ordered by the PDJ.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fifteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than ten days thereafter.

---

[19]. In general, an order and notice of sanction will issue thirty-one days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-one days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.